1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   MICHAEL PAPARELLA,                    Case No. 22-cv-01295-WHO

8              Plaintiff,

9        v.                              ORDER GRANTING IN PART AND
                                         DENYING IN PART MOTION TO
10  PLUME DESIGN, INC.,                  DISMISS

              Defendant.                 Re: Dkt. No. 15-1
11

12                              INTRODUCTION

13        Plaintiff Michael Paparella, a former employee of defendant Plume Design, Inc.

14  ("Plume"), has filed suit against Plume based on his allegedly wrongful termination.  Paparella,

15  who resides in Arizona, brought nine statutory and common law causes of action under California

16  law.  Plume filed the instant motion to dismiss the Complaint in its entirety on the basis that

17  California law does not apply to any of Paparella's claims.

18        Plume is correct that, as currently pleaded, Paparella's statutory claims under the

19  California Fair Employment and Housing Act ("FEHA") and the California Labor Code do not

20  allege the requisite nexus to California because, as alleged, he did not reside nor work here.  These

21  claims will be **DISMISSED** with leave to amend.  Paparella's common law wrongful termination

22  claim is also **DISMISSED** with leave to amend so that Paparella can more clearly explain a nexus

23  to California.  For the reasons discussed below, Paparella's common law claims for breach of

24  written contract and illegal forfeiture survive Plume's challenge.  Paparella's claim for an

25  accounting is dismissed without prejudice to Paparella seeking an accounting remedy in

26  connection with his remaining claims.

27                               BACKGROUND

28        On February 9, 2022, Paparella filed suit against Plume, bringing nine statutory and

common law causes of action under California law arising from his allegedly wrongful termination.  *See* Complaint ("Compl.") [Dkt. 1-1].  Paparella is, and at all times was, a resident of Maricopa County, Arizona, and is currently at least sixty-two years old.  *Id.* ¶¶ 1, 11.  Plume is an international software company that provides cloud management services to enable smart homes and offices.  *Id.* ¶ 12; Motion to Dismiss ("MTD") [Dkt. 15-1] at 7.  Plume is headquartered in Delaware and has its principal place of business in Santa Clara County.  Compl. ¶ 2.

On January 21, 2021, Plume hired Paparella to serve as its "VP Channel Development," which involved developing and implementing a "channel strategy"[1] for Plume, with a focus on particular international markets.  *Id.* ¶¶ 13, 15.  Plume extended an written offer of employment to Paparella.  *Id.* ¶ 13; *see also* Compl. Ex. B ("Employment Agreement") at 1.  The Employment Agreement included terms about stock options, compensation, and Plume's discretionary Milestone Bonus Program.  Employment Agreement ¶¶ 2–3.  In addition to the Employment Agreement, Plume also sent a Proprietary Information and Inventions Agreement ("PIIA") to Paparella.  Compl. ¶ 14; *see also* Compl. Ex. C (PIIA).  The PIIA explained Paparella's rights and obligations with respect to confidential information and ownership of inventions, among other things.  PIIA ¶¶ 2(b), 3(c).   Importantly, the PIIA included a provision regarding "Governing Law."  *Id.* ¶ 8(a). The PIIA established that:

> This Agreement will be governed by the laws of the State of California, without giving effect to the principles of conflict of laws. With respect to any disputes arising out of or related to this Agreement, the parties consent to the exclusive jurisdiction of, and venue in, the state courts in Santa Clara County in the State of California (or, in the event of exclusive federal jurisdiction, the courts of the Northern District of California).

*Id.* On January 21, 2021, Paparella signed the Employment Agreement, and on January 29, 2021, Paparella signed the PIIA.  Employment Agreement at 4; PIIA at 10.

Paparella's employment at Plume had a rocky start.  Paparella had a difficult time working with Plume's Chief Commercial Officer Tyson Marian, due in part to Marian's "abrasive and

[1] A "channel strategy" involves "engagement of independent third parties as intermediaries to market and sell Plume services to a customer base developed by the intermediaries."  Compl. ¶ 15.

United States District Court
Northern District of California

2

caustic approach to dealing with sales efforts."  Compl. ¶ 21.  According to Paparella, Marian spearheaded efforts for Plume to "get younger."  *Id.* ¶¶ 27–28.  In or around August 27, 2021, for instance, Marian referred to Paparella as an "old man" during a face-to-face lunch in Scottsdale, Arizona.  *Id.* ¶ 21.  In September 2021, Plume promoted Russell Dougherty, who is approximately 20 years younger than Paparella, to be Paparella's immediate supervisor.  *Id.* ¶ 26.  And from May 2021 to January 2022, at least ten of Plume's employees were terminated or left Plume "due to circumstances believed attributable to age discrimination."  *Id.* ¶ 28.

On October 15, 2021, Paparella was fired from Plume without advance notice or warning. *Id.* ¶ 32.  Paparella, who had not received any prior discipline or adverse performance reviews, contends that he was unlawfully fired as part of Plume's efforts to "get younger."  *Id.* ¶¶ 28–29, 32.  Paparella also alleges that Plume failed to pay him certain commissions and other compensation connected with transactions that he successfully closed during his nine-month tenure at Plume.  *See id.* ¶¶ 29–31, 38, 44–47, 50–51, 55.

On February 9, 2022, Paparella filed suit against Plume in the Superior Court of the State of California, County of Santa Clara.   Compl.  He pleaded nine causes of action: two claims under the California Labor Code (sections 203 and 210), three claims arising under the California Fair Employment and Housing Act (wrongful termination based on age discrimination, harassment, and a failure to prevent discrimination), and four common law claims for breach of contract, illegal forfeiture, wrongful termination, and accounting.  On March 1, 2022, Plume removed to federal court on the basis of diversity, and the case was subsequently reassigned to me.  *See* Notice of Removal [Dkt. 1] at 3–4; Minute Entry [Dkt. 11].

On June 3, 2022, Plume moved to dismiss all of Paparella's claims under Rule 12(b)(6) under the theory that Paparella, as a resident of Arizona who was at all times employed by Plume in Arizona, could not assert claims based upon California law.  MTD at 6–7.  On June 22, 2022, four days after he was required to do so, Paparella filed his opposition brief.  Opposition to Motion to Dismiss ("Opp.") [Dkt. 18].  On June 24, 2022, Plume filed its reply.  Reply [Dkt. 20].

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

On a motion to dismiss for failure to state a claim, the court accepts all factual allegations as true and "draw[s] all reasonable inferences" in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

**DISCUSSION**

Plume has moved to dismiss on the basis that California law does not apply extraterritorially to Paparella's claims under California's Fair Employment and Housing Act ("FEHA"), the California Labor Code, and common law.  MTD at 6–7.  On reply, Plume also invites me to strike Paparella's opposition brief as untimely because Paparella filed it four days late without seeking an extension or acknowledging the untimeliness.  Reply at 3.  Paparella's failure to comply with the briefing schedule established by our Local Rules is improper, as is his failure to seek an extension or explain the four-day tardiness.  Nonetheless, in the Ninth Circuit, "[p]ublic policy favors disposition of cases on the merits," *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002), and I will exercise my discretion to consider the merits of the arguments raised in his response brief.  This should not happen again.

I address each category of Paparella's claims below, beginning with the FEHA claims.

4

## I.  FEHA CLAIMS

Paparella's three FEHA claims are based on age discrimination, age harassment, and failure to prevent age discrimination and harassment (claims 5–7).  *See* Compl. ¶¶ 58–79; MTD at 8, 11.  Plume argues that, as a matter of California law, Paparella cannot bring these claims because he is an Arizona citizen who was employed and worked in Arizona, and Paparella did not show that the allegedly tortious conduct took place in California.  MTD at 11.  Because I agree that Paparella did not show that the discriminatory conduct took place in California, I will dismiss these claims with leave to amend so that Paparella can more clearly show a nexus to California.

"State statutes are presumed not to have extraterritorial effect."  *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014).  In determining FEHA's extraterritorial reach, the California Court of Appeals held that "FEHA was not intended to apply to non-residents where . . . the tortious conduct took place out of this state's territorial boundaries."  *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852, 1858–60 (1996) (reviewing FEHA's language and legislative history to reach its holding).  Therefore, a plaintiff residing outside of California is "required to plead at a minimum that he was either employed in California or that the discriminatory conduct occurred in California" for the claim to fall within FEHA's scope.  *Gonsalves v. Infosys Technologies, LTD.*, No. 09-cv-4112-MHP, 2010 WL 1854146, at *5 (N.D. Cal. May 6, 2010) (citing *Campbell*, 42 Cal. App. 4th at 1861).

In *Campbell*, the California Court of Appeal held that FEHA was not intended to apply to non-residents if the alleged conduct occurred outside of California.  *Campbell*, 42 Cal. App. 4th at 1852. The plaintiff in *Campbell*, a Washington resident, brought employment discrimination claims under FEHA for harassment.  *Id.* at 1852–53.  Except for some stopovers in California, both plaintiff's official functions and the alleged harassment took place on the high seas.  *Id.* at 1858.  As a result, "the relationship with California [was] slight": while the defendant company was headquartered in California, "no one in its headquarters participated or ratified the conduct."  *Id.*  Accordingly, *Campbell* held that FEHA did not apply for lack of a sufficient nexus with California.  *Id.* at 1858–59.

Following *Campbell*, several courts have considered whether non-California residents have

1    sufficiently alleged discriminatory conduct in California to proceed under FEHA.  In *Sims*, a

2    Washington resident brought age discrimination claims under FEHA.  *Sims v. Worldpac Inc.*, No.

3    12-cv-05275-JSW, 2013 WL 663277, at *1 (N.D. Cal. Feb. 22, 2013).  Because plaintiff

4    specifically identified the individuals who "engaged in the alleged discriminatory conduct and

5    retaliatory conduct," and because those individuals were based in California when they took those

6    actions, the court denied defendant's motion to dismiss on the basis of extraterritoriality.  *Id.* at *3

7    ("Sims also alleges that Cushing was in California when he and Healy advised Sims that Sims

8    would no longer be permitted to work from his home in Arkansas . . . Sims also alleges that

9    Cushing made the decision to terminate him in California, and made all arrangements associated

10   with his termination in California.").

11        In the *Gonsalves* case, the plaintiff, an Ohio resident who had never worked in California,

12   alleged that his employer had discriminated against him on the basis of his age and retaliated

13   against him in violation of FEHA.  *Gonsalves*, 2010 WL 1854146, at *2.  The court noted that to

14   state a claim under FEHA, the plaintiff would be required to show (1) that he had been employed

15   in California or (2) that the allegedly tortious conduct took place in California.  *Id.* at *5.  In

16   support of the former, the plaintiff alleged that he traveled to California on several occasions and

17   managed clients in California.  *Id.  Gonsalves* held that such allegations were insufficient and

18   reasoned that "[t]o interpret FEHA as covering all employees who perform some job duties or

19   manage some clients in California, even when no connection exists between the California

20   activities and the discrimination at issue, would clearly implicate the federal constitutional

21   concerns that animated *Campbell*'s limitation on FEHA's extraterritorial reach."  *Id.* (citing

22   *Campbell*, 42 Cal. App. 4th at 1858–59).  *Gonsalves* instructed that information regarding "(1)

23   who was responsible for demoting and firing Gonsalves, (2) where those individuals were located

24   when they engaged in such conduct [and] (3) where Gonsalves located when he was allegedly

25   discriminated against" was "critical to adjudicating his FEHA claims" so that the court could

26   "determine if the alleged discrimination suffered by Gonsalves had a nexus with California."  *Id.*

27   at *6.

28        Finally, in *Dodd-Owens*, the court granted defendant's motion to dismiss as to plaintiff's

1     gender discrimination claim under FEHA for failure to show a sufficient nexus to California.

2     *Dodd-Owens v. Kyphon, Inc.*, No. 06-cv-3988-JF, 2007 WL 420191, at *1 (N.D. Cal. Feb. 5,

3     2007).  While the amended complaint asserted that corporate officers were involved in the alleged

4     discriminatory conduct, "it only implies that they were employed in California and does not

5     identify what actions, if any, they took in California."  *Id.* at *3.  The court continued that "[i]f

6     California-based employees participated in or ratified the alleged tortious conduct, the complaint

7     must so state with specificity so that the Court can determine if these actions are sufficient to state

8     a claim under FEHA."  *Id.*

9          Given these precedents, Paparella has failed to show that FEHA applies to his claims.  He

10    has not sufficiently alleged that he was either employed in California or that the discriminatory

11    conduct occurred in California.  In fact, with respect to the location of his employment, Paparella

12    alleged that he was an Arizona resident at all relevant times; he performed services for Plume in

13    Arizona, and attended a meeting with Marian in Scottsdale, Arizona.  Compl. ¶¶ 1, 21.  The

14    Complaint does not allege that Paparella ever performed services for Plume in California.

15         Paparella also does not specify where the allegedly discriminatory conduct took place,

16    other than the meeting with Marian in Scottsdale.  *Id.* ¶ 21.  Noticeably absent from the Complaint

17    are any facts concerning the location where Marian is based, where else any other hostile or

18    discriminatory conduct occurred, where Paparella was ultimately terminated, and who was

19    responsible for the decision to terminate him.  Because the Complaint is unclear about the

20    identities of the actors, location of said actors, and existence of any tortious conduct in California,

21    Paparella has failed to sufficiently plead facts establishing a basis for FEHA to apply to his claims.

22    *See Loza v. Intel Americas, Inc.*, No. 20-cv-06705-WHA, 2020 WL 7625480, at *4 (N.D. Cal.

23    Dec. 22, 2020) (dismissing FEHA claims for lack of sufficient California nexus where plaintiff

24    alleged only that defendant's principal place of business was located in California and that his

25    supervisor worked in California).

26         I will give Paparella leave to amend these claims so that he can establish (1) who was

27    responsible for firing him; (2) where those individuals were located when they engaged in such

28    conduct; (3) where he was located during the times that the allegedly discriminatory conduct

United States District Court
Northern District of California

7

1    occurred; and (iv) any other facts showing a nexus to California.

2    **II.     CALIFORNIA WAGE LAW CLAIMS**

3            Paparella also brings claims under California Labor Code section 203 for wages allegedly

4    owed at termination and under section 210 for wages allegedly owed during employment.  *See*

5    Compl. ¶¶ 48–57 (his third and fourth causes of action).  Additionally, he explained in a footnote

6    in his response brief that his eighth cause of action for "Wrongful Termination (Common Law)" is

7    "set forth in the alternative" "as the wrongful termination claim may be deemed to be tied to a

8    violation of California Labor Code Section 204, though not expressly set forth as such in the

9    Complaint."  Opp. at 13 & 13 n.2.

10           As with the FEHA claims, Plume argues that the California Labor Code claims must be

11   dismissed because Paparella has not shown that California wage law applies to him.  I agree.  As

12   Plume notes, the California Supreme Court recently addressed the scope of the California Labor

13   Code to interstate employees.  MTD at 13–14.  *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732

14   (2020) considered whether plaintiffs (a group of flight attendants, pilots, and other interstate

15   transportation workers) were entitled to wage statements prepared in compliance with section 226,

16   even though they performed most of their work outside of California.  *Id. at 740.*  It explained that

17   "[t]here is no single, all-purpose" test for "what kinds of California connections will suffice to

18   trigger the relevant provisions of California law."  *Id.* at 752.  Rather, "each law must be

19   considered on its own terms."  *Id.*  For claims under section 226 based on a failure to provide

20   accurate wage statements, the law "does not operate at an hourly, daily, or even weekly level," but

21   regulates something given at a specific time—namely, "the information an employer must give its

22   employees when it pays [their] wages."  *Id.* at 752–53.  Because it is possible for an employee to

23   work in multiple jurisdictions during the pay period covered by a given wage statement, the

24   appropriate test for its extraterritorial application was whether the employee's "principal place of

25   work is in California."  *Id.* at 754.

26           In *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1142–43 (9th Cir. 2021), *cert. denied*, No.

27   21-260, 2022 WL 2347629 (U.S. June 30, 2022) the Ninth Circuit drew upon *Ward* when it

28   decided the circumstances where an employee who worked for an intrastate employer could bring

United States District Court
Northern District of California

8

a claim under section 203. *Bernstein* reasoned that waiting time penalties under section 203 (which accrue where an employer fails to promptly pay wages upon discharging an employee) are analogous to wage statement requirements under section 226. *Id.* at 1143. For one thing, "[b]oth the waiting time penalties and the wage statement requirements pertain to a tangible object that the employer must give to the employee." *Id.* And for another, "[b]oth requirements are technical in nature: section 226 specifies the information a wage statement must contain, and the waiting time penalties specify the time in which an employer must remit an employee's wages after separation from employment." *Id.* The Ninth Circuit concluded that, "using *Ward*'s language, the 'kinds of California connections' that 'will suffice to trigger the' two provisions are the same." *Id.* (quoting *Ward*, 9 Cal. 5th at 752).

Based on *Bernstein* and *Ward*, a plaintiff may bring a section 203 claim where the employee's "principal place of work is in California." *Ward*, 9 Cal. 5th at 760. "This test is satisfied if the employee works a majority of the time in California or, for interstate transportation workers whose work is not primarily performed in any single state, if the worker has his or her base of work operations in California." *Id.* at 760–61.

Paparella has not shown that his principal place of work is in California. In fact, his complaint alleges exactly the opposite: Paparella "is, and at all relevant times was, a resident of Maricopa County, Arizona." Compl. ¶ 1. Far from working "a majority of the time in California," *Ward*, 9 Cal. 5th at 761, Paparella has not alleged that he spent a single hour in California. As a result, I find that he has not shown that he can assert claims based on California Labor Code sections 203 and 210. *Cf. Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-cv-0982-EMC, 2012 WL 12942824, at *6 (N.D. Cal. May 3, 2012) (dismissing Labor Code claims brought by California residents against a California employer where work was "performed principally outside of California"). Paparella's claims based on violations of sections 203 and 210 are dismissed.

### III.   COMMON LAW CLAIMS

Finally, Plume moves to dismiss Paparella's common law claims for breach of written contract, illegal forfeiture, wrongful termination, and accounting for want of "any meaningful

9

California connection." MTD at 16 (capitalization altered for clarity). I disagree with Plume that the breach of contract, illegal forfeiture, and accounting claims require the same extraterritoriality analysis. To the extent that Paparella's wrongful termination claim is tied to either a violation of the FEHA or California Labor Code, though, I agree with Plume that this claim must be dismissed because I have already dismissed the FEHA and Labor Code claims.

### A.   The Breach of Written Contract Claim.

Paparella alleges that California law applies to his breach of written contract claim (the first cause of action) because the PIIA includes a choice-of-law provision. *See* Opp. at 6. I agree.

The PIIA has an express choice of law provision stating that the PIIA "will be governed by the laws of the State of California, without giving effect to the principles of conflicts law." PIIA ¶ 8(a). The PIIA is expressly referenced in Section 11 of the Employment Agreement. *See* Employment Agreement ¶ 11 ("As a condition of your employment, you are also required to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (the 'Confidentiality Agreement') . . . we must receive your signed Confidentiality Agreement before your first day of employment."). Paparella alleges, and Plume does not dispute, that the PIIA was incorporated into the Employment Agreement, consistent with Sections 11 and 12 of the Employment Agreement. Opp. at 4. Plume argues that the choice-of-law provision applied "only to the subject matter of the PIIA, not the broader Employment Agreement," MTD at 17, but has not provided any evidence suggesting that a different forum state's laws were intended to apply to the Employment Agreement. As a result, I conclude that California law applies to Paparella's breach of contract claim.

Plume contends that Paparella's breach of contract claim fails due to extraterritoriality considerations. MTD at 17 ("The PIIA's choice-of-law provision is irrelevant to Paparella's entitlement to statutory remedies under California law."). Plume misses the mark. Although somewhat inartfully pleaded, Paparella is not using his breach of contract claim as a vehicle through which he can seek statutory remedies under California's Labor Code. *See* Opp. at 11 (contending that interpretation of the agreements at issue "do not require the extraterritorial application of California wage and hour laws"). Instead, Paparella alleges that Plume breached the

1    terms of the Employment Agreement and MBO Agreement with regard to the commissions and

2    stock options.  In other words, Paparella is suing for the compensation that he is allegedly

3    *contractually owed*, not based on compensation pursuant to the California Labor Code.

4          To be clear, the choice of law provision in Paparella's employment contract does not allow

5    him to bring suit under California's Labor Code or the FEHA.  "This argument conflates statutory

6    claims that exist independent of the contract with claims that arise from the agreement

7    itself."  *Cotter*, 60 F. Supp. 3d at 1064.  "Even if the choice of law provision were intended to

8    confer upon out-of-state [wager earners] a cause of action for violation of California's wage and

9    hour laws, it could not do so.  An employee cannot create by contract a cause of action that

10   California law does not provide."  *Id.* at 1065; *see also O'Connor v. Uber Technologies, Inc.*, 58

11   F. Supp. 3d 989, 1005–06 (N.D. Cal. 2014) (holding that choice-of-law provision in licensing

12   agreement does not overcome presumption against extraterritorial application of plaintiffs' wage

13   claims; *Wood v. iGATE Techs., Inc.*, No. 15-cv-00799-JSW, 2016 WL 3548410, at *5 (N.D. Cal.

14   June 30, 2016) (holding that out-of-state plaintiffs cannot use choice-of-law provision in

15   employment agreement to bring wage or wrongful termination claims under California law).  To

16   the extent that Paparella seeks to ground his FEHA or Labor Code claims in the choice-of-law

17   provision, he cannot do so.  But the breach of contract, illegal forfeiture, and accounting claims do

18   not pose these issues.

19         Plume cites *Wright v. Adventures Rolling* for the proposition that an out-of-state plaintiff

20   bringing a breach of contract claim under California law creates extraterritoriality issues, but

21   *Wright* is readily distinguishable.  *See* MTD at 16; Reply at 6–7.  The *Wright* plaintiffs' breach of

22   contract claim was based on language in the employment agreements that, "[f]or the tenure of your

23   training and employment with ARCC, you are considered to be a California resident, subject to

24   California's tax laws and regulations."  *Wright*,  2012 WL 12942824, at *1.  The *Wright* plaintiffs

25   argued that this language meant that they were "contractually entitled to the benefit of California's

26   wage and hour laws."  *Id.* at *6.  Unlike the *Wright* plaintiffs, Paparella is suing for compensation

27   that he was allegedly contractually promised, not compensation based on California wage and

28   hour laws.

United States District Court
Northern District of California

11

I conclude that Paparella's breach of contract claim survives Plume's challenge based on extraterritoriality.

**B.      The Illegal Forfeiture Claim.**

Plume next argues that Paparella's "illegal forfeiture" claim (his second cause of action) fails because Paparella did not allege "facts connecting him or his commissions to California." MTD at 15.  After Plume noted that Paparella failed "to identify the specific Labor Code provision on which this claim is based," *id.* at 15, Paparella responded that this claim does not concern statutory rights as provided for under the Labor Code for wages and hour claims, but is rather "subject to considerations of unconscionability" and vague and ambiguous contract provisions. Opp. at 11.

Because Paparella's claim here is based on the contract, it does not raise extraterritorial issues.  *Johnson v. Hewlett-Packard Co.*, the only case cited by Plume, is not on point.  No. 09-cv-3596-CRB, 2010 WL 2680772, (N.D. Cal. July 6, 2010).  The *Johnson* plaintiffs alleged that HP had wrongfully denied them certain commissions to which they were entitled, and brought claims including breach of employment contract, unjust enrichment, violations of California Labor Code and wage orders, and promissory estoppel.  *Id.* at *1.  *Johnson* found that the Colorado residents were not entitled to bring claims under California's employment law, but that they *could* sue for the wrongfully held commissions based on the contracts.  *Id.* at *3.

I conclude that because the illegal forfeiture claim is not based on California employment law but (according to Paparella) flows from the ambiguous language of the contract, it survives Plume's motion to dismiss.

**C.      Wrongful Termination (Common Law) Claim.**

Plume's motion to dismiss Paparella's common law wrongful termination claim fares better.   Under California law, a wrongful termination in violation of public policy claim must draw from a fundamental public policy embodied in a constitutional or statutory provision.  *See Violan v. On Lok Senior Health Servs.*, No. 12-cv-05739-WHO, 2013 WL 6907153, at *13 (N.D. Cal. Dec. 31, 2013) ("An employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision can give rise to a tort action.").

1   To the extent that the "Wrongful Termination (Common Law)" claim is tied to a violation of the

2   California Labor Code, Opp. at 13 n.2, then this claim must be dismissed because Paparella did

3   not work a majority of his time in California. *See Wood*, 2016 WL 3548410, at *6 (dismissing

4   wrongful termination in violation of public policy claim based on alleged Labor Code violations

5   where plaintiff did not earn wages in California). Likewise, if this claim is based on his FEHA

6   claims, then it too fails for lack of showing the requisite California nexus. *See Motamedi v.*

7   *Radioshack Corp.*, No. 08-cv-06653, at *3 (C.D. Cal. Dec. 4, 2008) (dismissing wrongful

8   termination in violation of public policy claim based on alleged FEHA violations where plaintiff

9   failed to show that the alleged conduct giving rise to the FEHA claims occurred in California).

10          As a result, I dismiss this claim but with leave to amend.

11          **D.      Accounting Claim.**

12          Finally, Plume moves to dismiss Paparella's claim for an accounting (his ninth cause of

13   action) based on extraterritoriality and the theory that an accounting is a remedy in equity, not a

14   standalone claim. MTD at 16 & 16 n.12. Paparella responds that his claim for an accounting is to

15   determine "the amount of commissions and bonuses that were to have been paid to Paparella on

16   the Employment Agreement and MBO Plan," and that the claim does not "rest on the application

17   of California statutory laws on an extraterritorial basis." Opp. at 12; *see also* Compl. ¶ 93

18   (alleging that the "amount of money due from Plume . . . as well as the amount otherwise payable

19   by Plume and/or Plaintiff to various government agencies cannot be determined without an

20   accounting of commission and bonus compensation due and owing" to Paparella). Paparella does

21   not respond to Plume's theory that a claim for an accounting is a remedy, not a standalone claim.

22          "A cause of action for an accounting requires a showing that a relationship exists between

23   the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff

24   that can only be ascertained by an accounting." *Merritt v. JP Morgan*, No. 17-cv-06101-LHK,

25   2018 WL 1933478, at *9 (N.D. Cal. Apr. 24, 2018) (quoting *Teselle v. McLoughlin*, 173 Cal. App.

26   4th 156, 179 (2009)). "[C]ourts in California have gone both ways" as to whether a claim for

27   accounting is viable as an independent cause of action or if it is instead an equitable remedy. *See,*

28   *e.g.*, *LeGarie v. Nurse*, No. 21-cv-04739-JCS, 2021 WL 5771144, at *12 (N.D. Cal. Dec. 6, 2021)

United States District Court
Northern District of California

(citing and collecting authorities).  I find that Paparella's request for an accounting is more accurately understood as a remedy, not an independent cause of action.  I therefore dismiss this claim without leave to amend but without prejudice to Paparella seeking an accounting remedy in connection with his breach of contract or illegal forfeiture claims.

## CONCLUSION

For the foregoing reasons, I **GRANT** in part and **DENY** in part Plume's motion to dismiss. Paparella's claims under the California Labor Code, FEHA, and wrongful termination (common law), are **DISMISSED** with leave to amend.  Paparella's claim for an accounting is **DISMISSED** but Paparella may seek an accounting remedy in connection with his contractual claims.  I **DENY** Plume's motion to dismiss Paparella's first and second causes of action for breach of written contract and illegal forfeiture.

Paparella shall file an amended complaint, if he chooses, by August 8, 2022.

**IT IS SO ORDERED.**

Dated: July 25, 2022

William H. Orrick
United States District Judge

United States District Court
Northern District of California